EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Rafael Bermúdez Meléndez | 2017 TSPR 157 <br><br> 198 DPR ____ |

Número del Caso: CP-2016-7


Fecha:   11 de agosto de 2017


Abogados del querellado:


       Lcdo. Guillermo Figueroa Prieto
       Lcdo. Mario Rodríguez Torres



Oficina del Procurador General:

       Lcdo. Joseph Feldstein Del Valle
       Sub Procurador General

       Lcda. Yaizamarie Lugo Fontanez
       Procuradora General Auxiliar


Comisionado Especial:

       Hon. Carlos Rodríguez Muñiz


Materia: La suspensión será efectiva el 16 de agosto de 2017, fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael Bermúdez Meléndez        CP-2016-7
        (TS-8317)

PER CURIAM

En San Juan, Puerto Rico, a 11 de agosto de 2017.

Hoy, nos vemos obligados a disciplinar a un miembro de nuestra profesión legal, por apartarse del compromiso ético inquebrantable que tiene todo abogado y abogada de exaltar el honor y la dignidad de la profesión, tanto en el desempeño de su deber profesional como en su vida privada, y de evitar la apariencia de conducta impropia. Ello, al sostener una relación personal y comunicaciones con una miembro del Jurado en un caso criminal donde el letrado representaba al acusado. Veamos.

I.

El 13 de noviembre de 2013, el entonces Fiscal General del Departamento de Justicia, el Fiscal José B. Capó Rivera, presentó una queja ante este Tribunal contra el licenciado Rafael Bermúdez Meléndez. A continuación, pasamos a exponer los hechos allí alegados.

Según se desprende de la queja presentada por el Fiscal Capó Rivera, la Fiscalía de Humacao investigó y procesó criminalmente al señor Javier Hernández Ramos por los delitos de asesinato estatutario, robo, escalamiento, conspiración y violación a varias disposiciones de la *Ley de Armas de Puerto Rico.* Tras varios incidentes procesales -- entre los cuales se desprende que, en un primer juicio celebrado en contra del señor Hernández Ramos, el foro primario decretó un *mistrial,* -- durante el mes de abril de 2013, comenzó un segundo juicio por jurado en contra del señor Hernández Ramos, en el Centro Judicial de Humacao. La representación legal del señor Hernández Ramos estuvo a cargo del licenciado Bermúdez Meléndez, Director de la Sociedad para Asistencia Legal de Humacao.

Así las cosas, el 18 de septiembre de 2013 el jurado emitió un veredicto de culpabilidad en los delitos de robo, escalamiento, conspiración y en dos de las acusaciones bajo la *Ley de Armas de Puerto Rico*. No obstante, por el delito de asesinato estatutario y otra de las acusaciones bajo el referido estatuto, el veredicto fue de no culpabilidad.

Según alega el Fiscal Capó Rivera, luego de emitido el veredicto, pero antes de dictarse sentencia, la Fiscalía de Humacao comenzó a recibir información de que varios miembros del Jurado estaban incómodos con la forma en que se llevó a cabo el proceso de deliberación en el caso y con las actuaciones de quien fungió como Presidenta del Jurado, la señora Exerly Joan Olmeda Berríos. Ante tales alegaciones, se realizó una investigación de la cual surgió que existía una relación personal entre la Presidenta del Jurado y el licenciado Bermúdez Meléndez; relación que, en ningún momento, había sido divulgada al Tribunal.

Posteriormente, el 23 de noviembre de 2013, el Tribunal de Primera Instancia de Humacao celebró una vista para dictar sentencia contra el señor Hernández Ramos. En dicha fecha, el Ministerio Público informó al Juez que presidía sala de lo acontecido.

Ante tal panorama, recibida la queja presentada por el Fiscal Capó Rivera, el 13 de diciembre de 2013 este Tribunal emitió una *Resolución* mediante la cual se le ordenó a la Procuradora General que realizara la correspondiente investigación y rindiera un informe.

En el ínterin, el 24 de marzo de 2015, el licenciado Bermúdez Meléndez contestó la queja y aceptó que, tras haberse rendido el veredicto en contra del señor Hernández Ramos, inició una relación personal con la señora Olmeda González. Asimismo, alegó que de la queja presentada no

existía evidencia de alguna relación personal entre ambos durante la celebración del juicio.

Así, pues, tras realizar la investigación de rigor, el 24 de abril de 2015 la Oficina de la entonces Procuradora General presentó su informe. En el mismo, la entonces Procuradora General determinó que, según la prueba que tuvo ante su consideración, quedó demostrado que el licenciado Bermúdez Meléndez y la señora Olmeda Berríos sí sostuvieron una relación personal luego del 18 de septiembre de 2013; fecha en que se rindió el veredicto en contra del señor Hernández Ramos. No obstante, la pasada Procuradora General concluyó que "*la prueba sometida no es clara, robusta y convincente para demostrar la existencia ni la apariencia de comunicación o relación personal entre el letrado y la señora Olmeda Berríos previo a que se emitiera el veredicto*"[1].

Posteriormente, el Fiscal Capó Rivera presentó su *Escrito en Cumplimiento de Orden*, mediante el cual expuso que, según surge de la prueba presentada junto a la queja, así como de la investigación realizada por la Oficina de la Procuradora General, existe evidencia acreditativa de que el licenciado Bermúdez Meléndez incurrió en conducta antiética al comenzar una relación personal con la Presidenta del Jurado.

---

[1] *Véase Informe de la Procuradora General* de 24 de abril de 2015, pág. 14. (Énfasis en el original omitido).

Así las cosas, el 27 de mayo de 2016 emitimos una *Resolución* mediante la cual ordenamos a la Procuradora General a presentar la querella correspondiente. La misma fue presentada el 23 de agosto de 2016, mediante la cual se le imputó al letrado el siguiente cargo:

> El licenciado Bermúdez Meléndez infringió los preceptos del Canon 38 de Ética Profesional, el cual establece el deber del abogado de exaltar el honor y la dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales, y de evitar hasta la apariencia de conducta impropia, al tener o mantener una relación personal y comunicaciones con una miembro del jurado de un caso donde él representaba al acusado, en fecha cerca a la deliberación del jurado y el veredicto[2].

El 12 de septiembre de 2016, el licenciado Bermúdez Meléndez presentó su contestación a la queja instada en su contra, en la cual adujo que no existía prueba clara, robusta y convincente de que se hubiese iniciado una relación personal entre éste y la señora Olmeda Berríos durante el transcurso del procedimiento criminal instado en contra del cliente que éste representaba. Además, adujo que tampoco existía evidencia de que la relación personal entre ambos hubiese afectado el resultado o integridad del proceso criminal.

Luego de la debida designación del Hon. Carlos Rodríguez Muñiz, Ex Juez del Tribunal de Apelaciones, como Comisionado Especial, y tras varias incidencias procesales -- entre las que se incluye el hecho de que ambas partes

---

[2] *Véase Querella*, pág. 8.

decidieron someter el caso por las estipulaciones de las partes y el expediente, -- se presentó ante nos el *Informe del Comisionado al Honorable Tribunal Supremo* (en adelante, el "*Informe del Comisionado*").

Según se desprende del referido informe, el Comisionado Especial expresó que "*[p]resentar una querella amparada en violación a un canon general de excesiva amplitud como es el Canon 38 en vez de ampararse en el Canon 16 que regula específicamente el contenido de la comunicación entre el abogado y el jurado es cuando menos 'llamativo'*"[3]. No obstante, tras reconocer que no es parte de sus funciones el apercibir a una parte cómo presentar un caso, el Comisionado Especial determinó que el hecho de que la relación personal entre el letrado y la Presidenta del Jurado hubiese surgido un día después de que se rindiera el veredicto, "***pero antes de dictarse la sentencia[,] la cual da por terminado el proceso criminal***"[4], no violaba las disposiciones del Canon 38 de Ética Profesional.

Recibido el Informe del Comisionado, el 4 de mayo de 2017, la Oficina del Procurador General presentó su *Reacción al Informe del Comisionado Especial*. En la misma, dicha entidad reafirmó su postura en torno a que el licenciado Bermúdez Meléndez violentó los preceptos contenidos en el Canon 38 de Ética Profesional, al sostener una relación

---

[3] *Véase Informe del Comisionado al Honorable Tribunal Supremo*, pág. 8.
[4] *Íd.*, a la pág. 10.

personal con la señora Olmeda Berrios, quien era Presidenta del Jurado en un caso criminal donde éste representaba al acusado.

Es, pues, a la luz del marco fáctico y procesal antes expuesto, que procedemos a resolver este asunto.

## II.

Como es sabido, las normas de conducta contenidas en los cánones de ética profesional son aquellos estándares mínimos de conducta que todo miembro de la profesión legal debe acatar. *In re Ramírez Salcedo*, 2016 TSPR 174, 196 DPR ___ (2016); *In re Ortiz Guevara y Rivera Lozada*, 2016 TSPR 55, 195 DPR ___ (2016); *In re Guemárez Santiago*, 191 DPR 611 (2014). Dicho cuerpo normativo busca promover el ejercicio profesional y personal del abogado y la abogada a tono con los más altos principios de conducta digna. *In re López Santos*, 2016 TSPR 37, 194 DPR__ (2016); *In re De Jesús Román,* 192 DPR 799, 802 (2015); *In re Suárez Jiménez*, 192 DPR 152 (2014). Ello, a su vez, redunda en beneficio de la profesión, la ciudadanía y nuestras instituciones de justicia. *In re Franco Rivera*, 2017 TSPR 36, 197 DPR ___ (2017); *In re Suárez Jiménez, supra.* El incumplimiento con estas normas éticas acarrea fuertes sanciones disciplinarias. *In re Franco Rivera, supra*, a la pág. 8; *In re Pestaña Segovia*, 192 DPR 485 (2015); *In re Irizarry Irizarry*, 190 DPR 368 (2014).

En lo pertinente a la controversia que nos ocupa, el

Canon 38 de Ética Profesional establece que:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y **debe evitar hasta la apariencia de conducta profesional impropia**…
>
> […]
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, **todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.** 4 LPRA Ap. IX, C. 38.

Al analizar el alcance del referido canon, debemos comenzar señalando que si bien la mayoría de las normas contenidas en el Código de Ética Profesional se ciñen a regular el desempeño del abogado y la abogada en su faceta profesional, los principios contenidos en el Canon 38 transcienden su alcance al ámbito privado. *In re Ramírez Salcedo*, *supra*; *In re Astacio Caraballo*, 149 DPR 790 (1999); *In re Padilla Rodríguez*, 145 DPR 536 (1998). Precisamente, por tratarse de un canon que ejerce un rol fundamental y central en el ordenamiento deontológico de nuestra profesión, el mismo opera *ex proprio vigore. In re Olivera Mariani*, 173 DPR 498, 512 (2008); *In re Pérez Rodríguez*, 172 DPR 665, 672 (2007); *In re Gordon Menéndez I*, 171 DPR 210, 215 (2007).

En ese sentido, al interpretar la mencionada disposición deontológica, hemos señalado que la apariencia, o mera apariencia, de conducta impropia por parte de un abogado o abogada, tanto en la esfera pública como en la

privada, *"puede ser muy lesiva al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados"*. *In re Ortiz Brunet*, 152 DPR 542, 555-556 (2000); *In re Rojas Lugo*, 114 DPR 687, 690 (1983); *In re Coll Pujols*, 102 DPR 313, 319 (1974). *Véanse* además *In re Sierra Arce*, *supra*; *In re Toro Iturrino*, 190 DPR 582 (2014); *In re Santiago Tirado*, 173 DPR 786 (2008); *In re Meléndez Figueroa*, 166 DPR 199 (2005). No olvidemos que los abogados y abogadas son *"un espejo en el cual se refleja la imagen de la profesión"*. *In re Sierra Arce*, 192 DPR 140, 148 (2014); *In re Gordon Menéndez I*, *supra*, a la pág. 215.

Es por ello que, para evitar que la confianza depositada por nuestros ciudadanos y ciudadanas en sus instituciones de justicia sea socavada, hemos afirmado que *"la apariencia de conducta impropia tiene que sostenerse sobre la **impresión** que se le da al público de la violación de alguno de los cánones del Código de Ética Profesional"*. (Énfasis suplido). *In re Gordon Menéndez I*, *supra*, a la pág. 216; *In re Sepúlveda Girón*, 155 DPR 345, 360 (2001). Y es que

> la *ratio* que subyace la prohibición del citado Canon 38 es un componente esencial del sistema de responsabilidad profesional. En atención a ello, **se justifica de manera independiente que se sancione a un abogado por apariencia de conducta impropia.** Resolver lo contrario y condicionar su aplicación a la violación de algún otro canon, significaría convertirlo en innecesario y redundante. (Énfasis suplido). *In re Gordon Menéndez I*, *supra*.

Al sancionar a un abogado o abogada en un caso como el de autos, lo hacemos conscientes de que el procedimiento disciplinario no tiene como fin castigar al abogado o abogada querellada por alguna falta cometida, "*sino más bien proteger a la comunidad y a la profesión mediante una investigación de sus condiciones morales para determinar si puede continuar en la práctica*". *In re López González*, 171 DPR 567, 577 (2007); *In re Barreto Ríos*, 157 DPR 352, 356 (2002); *In re Liceaga*, 82 DPR 252, 255 (1961). No obstante, hemos sido enfáticos al establecer que "***el norte que en todo momento debe guiar a este Foro [en un procedimiento disciplinario] es el interés de proteger la comunidad y la profesión en general***". *In re López González*, *supra*.

### III.

De otra parte, es norma reiterada que, una vez este Tribunal nombra a un Comisionado Especial para que atienda un procedimiento disciplinario contra algún miembro de la profesión, será éste quien recibirá la prueba y dirimirá la evidencia conflictiva que pueda surgir. *In re Colón Hernández*, 189 DPR 275, 282 (2013); *In re Gordon Menéndez I*, *supra, a la pág. 217*; *In re Morales Soto*, 134 DPR 1012 (1994). Por ello, las determinaciones realizadas por un Comisionado Especial merecen nuestra mayor deferencia. *In re Soto Charraire*, 186 DPR 1019, 1029-1030 (2012); *In re Deynes Soto*, 164 DPR 327, 336 (2005); *In re Ortiz Brunet*, *supra*, a la pág. 548; *In re Soto López*, 135 DPR 642, 646 (1994).

Es por lo anterior que, como norma general, hemos establecido que, aunque este Tribunal no está obligado a aceptar el informe de un Comisionado Especial en un procedimiento disciplinario contra un abogado o una abogada -- ya que podemos adoptar, modificar o rechazar dicho informe, -- no se alterarán las conclusiones de hecho de un Comisionado Especial, excepto cuando se demuestre prejuicio, parcialidad o error manifiesto. *In re Soto Charraire*, *supra*; *In re Deynes Soto*, *supra; In re Ortiz Brunet*, *supra; In re Soto López*, *supra*.

No obstante, la deferencia que le debemos a las determinaciones de hecho realizadas por un Comisionado Especial se circunscribe exclusivamente a aquellos asuntos relacionados a testimonios orales vertidos en su presencia, por haber sido éste "*quien observa la actitud de los testigos, su forma de declarar, sus gestos, y en general, su conducta al prestar declaración*". *In re Ortiz Brunet, supra*, a la pág. 549, haciendo referencia a *Castro v. Meléndez*, 82 DPR 573 (1961). De manera que

> la norma de deferencia respecto a las determinaciones de hecho del Comisionado Especial no aplica cuando la evidencia consiste de deposiciones, estipulaciones escritas u orales, o por hechos incontrovertidos por las alegaciones o la prueba. Cuando estamos ante prueba documental, este Tribunal está en igual posición que el Comisionado Especial para hacer sus propias determinaciones y no podemos renunciar a ello sin afectar la efectividad de nuestra función disciplinaria. *In re Ortiz Brunet*, *supra*.

Es, precisamente, a la luz de la normativa antes

expuesta que procedemos a disponer del proceso disciplinario ante nuestra consideración.


IV.

Según se desprende del tracto aquí reseñado, como pudimos apreciar, el licenciado Bermúdez Meléndez fungió como representante legal del señor Hernández Ramos en un proceso criminal en su contra. Sin embargo, a pesar de ejercer dicha representación, el licenciado Bermúdez Meléndez entabló una relación personal con la señora Olmeda Berríos, Presidenta del Jurado en el juicio en contra de su cliente. Ello, **durante la vigencia del procedimiento criminal**.

Coincidimos, por una parte, con que la evidencia que tuvo ante sí el Comisionando Especial -- así como la admisión a tales efectos por el propio abogado -- acredita la existencia de una relación personal entre el letrado y la Presidenta del Jurado a los **tres (3) días** de que se rindiera el veredicto del señor Ramos Hernández. Sin embargo, resulta evidente que dicha relación se entabló **durante la vigencia del procedimiento criminal**, toda vez que al momento en que supuestamente surgió la misma, **no se había dictado sentencia en contra del señor Ramos Hernández**. Ello, de por sí, resulta en una conducta altamente cuestionable, revestida de apariencia de impropiedad. Máxime, cuando el letrado omitió

hacer mención o referencia alguna a dicha relación personal ante el Tribunal de Primera Instancia.

Sin duda alguna, en el presente caso, la conducta desplegada por el licenciado Bermúdez Meléndez atenta contra los postulados básicos del Canon 38 de Ética Profesional, *supra*. Ello, toda vez que pone en riesgo la confianza depositada por la ciudadanía en la profesión legal. Aparenta ser impropio -- además de poder constituir, en sí mismo, una violación independiente a algún precepto ético distinto al Canon 38 -- que un abogado de defensa, durante la tramitación de un pleito criminal en el que figura como representante legal del acusado, entable una relación personal con algún miembro del Jurado; específicamente, con la Presidenta del Jurado. Ello, independientemente del tipo de relación. Agrava aún más la situación el hecho de que el letrado se desempeña como Director de la Sociedad para Asistencia Legal de Humacao, por lo que claramente, debió haber conocido la apariencia que habría o podría ocasionar la existencia de dicha relación personal.

En fin, la conducta en la que incurrió el letrado, como mínimo, reviste de una apariencia de conducta impropia por parte de cualquier miembro de nuestra profesión. Tal es la gestión que, precisamente, regula y veda el Canon 38. La conducta en cuestión infringe los preceptos deontológicos básicos que revisten nuestra tan prestigiosa profesión. Es por ello que no podemos pasar por desapercibida tal

conducta.

En vista de todo lo anterior, suspendemos inmediatamente al licenciado Bermúdez Meléndez del ejercicio de la abogacía por el término de tres (3) meses. Se le ordena al licenciado Bermúdez Meléndez notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar inmediatamente de su suspensión a los foros judiciales y administrativos donde tenga casos pendientes. Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Notifíquese personalmente, a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael Bermúdez Meléndez                    Núm. CP-2016-7

SENTENCIA

En San Juan, Puerto Rico, a 11 de agosto de 2017.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se suspende al Lcdo. Rafael Bermúdez Meléndez del ejercicio de la abogacía por un término de tres (3) meses.

Se le impone al licenciado Bermúdez Meléndez el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos. Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Notifíquese personalmente, a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez suspendería de la profesión legal al Lcdo. Rafael Bermúdez Meléndez por el término de un (1) año.

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión Disidente.


                          Juan Ernesto Dávila Rivera
                          Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael Bermúdez Meléndez                    CP-2016-07
      (TS-8317)

Opinión disidente emitida por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 11 de agosto de 2017.

Digamos que el Manual de Empleados de una compañía prohíbe utilizar gorras durante la semana. En cambio, durante los fines de semana la prohibición se limita a gorras de contenido político. El sábado Juanita Román utilizó una gorra de su equipo favorito de béisbol. Su patrono la disciplinó porque el Manual también prohíbe "cualquier conducta impropia". Juanita, en cambio, planteó que la prohibición específica de las gorras da a entender que las gorras deportivas están permitidas los fines de semana y que resulta injusto utilizar el criterio general de cualquier conducta impropia para disciplinarla.

El relato anterior ilustra de manera sencilla lo que ocurre en este caso. La Opinión *Per curiam* que emite el Tribunal no cita su texto, pero el Canon 16 del Código de Ética Profesional regula la conducta en controversia: las comunicaciones de los abogados con los miembros del jurado. Ahora bien, como no se imputó ese Canon, una Mayoría de este Tribunal utiliza el criterio general de "apariencia de conducta impropia" para disciplinar una conducta que, curiosamente, el Canon que regula las relaciones entre los abogados y los miembros del jurado no prohíbe. No estoy conforme con utilizar el Canon 38 del Código de Ética Profesional para extender el alcance de los cánones que regulan en detalle una conducta, por eso disiento enérgicamente del curso mayoritario.

En primer lugar, conviene reiterar que en este caso no se probó que el Lcdo. Rafael Bermúdez Meléndez y la Sra. Exerly J. Olmeda Berríos, miembro del jurado, se comunicaran o tuvieran una relación durante el juicio, que comenzó en abril de 2013 y concluyó el 18 de septiembre de 2013, con el veredicto del jurado. Además, cabe mencionar que la Oficina del Procurador General y el licenciado Bermúdez Meléndez estipularon que ese día, el 18 de septiembre de 2013, el tribunal aceptó el veredicto y las partes no desearon comprobarlo, de modo que el Juez procedió a excusar al jurado del proceso. Por otro lado, no se presentó prueba alguna de que después del veredicto el licenciado Bermúdez Meléndez y la señora Olmeda Berríos dialogaran de materias

relacionadas al caso. Sólo se probó que después del veredicto tuvieron una relación personal.

A partir de lo anterior, la Oficina de la entonces Procuradora General recomendó archivar la queja, pues no encontró violaciones a los Cánones 16, 35 y 38 de Ética Profesional. No obstante, conforme a sus facultades, este Tribunal le ordenó a la Procuradora General que presentara la querella correspondiente. Consecuentemente, la Procuradora General presentó el siguiente cargo:

> El licenciado Bermúdez Meléndez infringió los preceptos del Canon 38 de Ética Profesional, el cual establece el deber del abogado de exaltar el honor y la dignidad de la profesión, aunque el así hacerlo conlleve sacrificios personales y de evitar hasta la apariencia de conducta impropia, al tener o mantener una relación personal y comunicaciones con un miembro del jurado de un caso donde él representaba al acusado, en fecha cerca a la deliberación del jurado y el veredicto.

La Opinión mayoritaria reconoce que el Comisionado Especial, quien recomendó archivar la querella, destacó que "[p]resentar una querella amparada en violación a un canon general de excesiva amplitud como es el Canon 38 en vez de ampararse en el Canon 16 que regula específicamente el contenido de la comunicación entre el abogado y un jurado es cuando menos 'llamativo'". *Informe del Comisionado al Honorable Tribunal Supremo*, pág. 8. Ahora bien, no discute por qué resulta llamativo ni cita el texto del Canon 16.

El Canon 16 de Ética Profesional, el cual no se incluyó en la querella, se titula *Conducta en relación con los jurados*. En lo pertinente, dispone:

> No debe el abogado comunicarse en forma alguna con los jurados acerca de casos en los cuales esté interesado y, ya en la etapa de la celebración del juicio, debe evitar comunicarse privadamente con ellos, aunque sea sobre asuntos extraños al caso excepto con el permiso del tribunal. También debe abstenerse de hacer sugerencias, al alcance del oído de jurados, dirigidas a la conveniencia o comodidad de éstos. No debe comunicarse con un jurado o con familiares de éste después del juicio sobre materias relacionadas con el caso excepto únicamente para investigar si existe alguna razón legal para impugnar el veredicto, y ello con el permiso previo del tribunal. Canon 16 del Código de Ética Profesional, 4 LPRA Ap. IX, sec. 16.

De acuerdo al Canon, vemos que el proceso judicial se divide en tres etapas: (1) **previo al juicio** no debe comunicarse acerca de los casos; (2) **durante el juicio** debe evitar comunicarse privadamente, aunque sea sobre asuntos extraños al caso; y (3) **después del veredicto no debe comunicarse** con el jurado o sus familiares **sobre materias relacionas al caso**, excepto con el permiso del tribunal para investigar si es posible impugnar el veredicto.

Como no se presentaron cargos por el Canon 16 el Tribunal no puede disciplinar al licenciado por el mismo. Véase <u>In re Hoffmann Mourino</u>, 194 DPR 179, 196 (2015) (Op. de conformidad, J. Martínez Torres) ("lo cierto es que estamos limitados a evaluar los cargos imputados en la querella presentada por la Oficina de la Procuradora

General, y de los cuales la letrada tuvo oportunidad de defenderse"). Ahora bien, como este regula la conducta en controversia, resulta necesario examinar si el mismo permite la conducta del licenciado Bermúdez Meléndez.

El licenciado Bermúdez Meléndez y la señora Olmeda Berríos sostuvieron una relación personal, **después del veredicto**. No se probó si hablaron de materias relacionadas al caso. Tampoco se demostró que se afectaron los procesos judiciales. De hecho, con el veredicto culminó la participación del jurado. De este modo, la única conducta imputada y probada fue sostener una relación personal con una miembro del jurado después del veredicto. Por consiguiente, no se probó con prueba clara robusta y convincente que el abogado violó el Canon 16, pues después del veredicto este solo prohíbe las comunicaciones relacionadas al caso.

Como no se violó la norma que rige de manera específica y concreta la conducta, resulta llamativo y problemático que el Tribunal se ampare en el criterio de apariencia de conducta impropia del Canon 38 para "ampliar" la prohibición particular del Canon 16. Este criterio impreciso y general no puede ser omnipotente, no puede tener el alcance de modificar unilateralmente el significado de los cánones restantes. El Código de Ética Profesional debe aspirar a cumplir una función importantísima: notificar adecuadamente a los abogados cuáles conductas se consideran antiéticas. No

se logra este propósito si el Canon 38 simplemente subsume todos los otros cánones.

No fomento que los abogados se relacionen con los miembros del jurado después del veredicto, todo lo contrario. Me parece una falta de juicio crasa y lo expresado no debe entenderse de otra forma. No obstante, es hora de que tomemos los casos disciplinarios como lo que son, procesos judiciales en los cuales las partes también son acreedoras de derechos constitucionales y jurídicos, donde la arbitrariedad, las inferencias y la falta de rigor no tienen cabida.

Maite D. Oronoz Rodríguez
Jueza Presidenta