Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| BETTY GONZÁLEZ DONES<br><br>Recurrida<br><br>v.<br><br>SARA ESTHER RIVERA PEÑA, LILLIAM MARGARITA RIVERA PEÑA, AMARILYS RIVERA PEÑA Y OTROS<br><br>Peticionarios | KLCE202400109 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Canóvanas<br><br>Caso Núm. JU2023CV00238<br><br>Sobre:<br>División o Liquidación de la Comunidad de Bienes Hereditarios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero, y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

# **RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de febrero de 2024.

## **I.**

El 25 de enero de 2024, el señor Andrés Rivera Peña, la señora Sara Rivera Peña (señora Rivera Peña), la señora Lilliam Rivera Peña, la señora Amarilys Rivera Peña, la señora Estrella Rivera Peña, el señor José Rivera Peña y el señor Miguel Rivera Peña (peticionarios), como parte de la sucesión del causante Crecencio Rivera Ortiz, presentaron una petición de *Certiorari* en la que solicitaron que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Canóvanas, (TPI, foro primario o *a quo*) el 19 de diciembre de 2023, y notificada y archivada en autos el 27 de diciembre de 2023.[1] Mediante el dictamen, el TPI declaró "HA LUGAR" una *Moción en Solicitud de Descalificación a tenor con el Canon 21 y 23 del Código de Ética*

---
[1] Apéndice de la petición de *Certiorari*, Anejo 1, págs. 1-2.

*Profesional*[2] y consecuentemente, descalificó al licenciado Pedro L. Betancourt Rivera (licenciado Betancourt Rivera), representante legal de los peticionarios, ya que, tiene interés en el caudal y lo convertirán en testigo por ser mencionado en las alegaciones.[3]

El 29 de enero de 2024, emitimos una *Resolución* en la que le concedimos a la señora Betty González Dones (señora González Dones o recurrida) un término de diez (10) días, a partir de la notificación, para exponer su posición en cuanto a los méritos del recurso de *Certiorari*.

El 9 de febrero de 2024, la recurrida presentó una *Oposición a la Expedición del Auto de Certiorari Solicitud de Deferencia Judicial ante Ausencia de Perjuicio, Parcialidad, Error Manifiesto o Abuso de Discreción*. En la misma solicitó que se deniegue la expedición de *certiorari* y se mantenga inalterada la determinación del TPI.

Contando con el beneficio de la comparecencia de ambas partes, damos por perfeccionado el recurso de epígrafe, y, en adelante, pormenorizaremos los hechos procesales atinentes al *Certiorari*.

**II.**

El caso de marras tuvo su génesis el 24 de agosto de 2023 cuando la señora González Dones presentó una *Demanda* de

---

[2] Íd., Anejo V, págs. 87-90.
[3] Íd., Anejo II, pág. 5. La Alegación 12 de la *Demanda* expresa lo siguiente sobre el licenciado Betancourt Rivera:

> 12. Una vez Don Crecencio Rivera Ortiz falleció, la parte demandada, específicamente, la Sra. Lilliam Rivera, Estrella Rivera y el hijo de la Sra. Sara Rivera Peña (**Sr. Pedro Luis Betancourt Rivera**), constantemente le proferían comentarios hirientes y ofensas a la Sra. Betty González Dones: "bruta" "tú no sabes nada", "cochina", "ciega", "te tienes que ir de la casa"; y presionándola incesantemente a abandonar su propiedad. Esta situación incesante, obligó a la demandante a irse de la propiedad. A pesar de que la Sra. Betty González Dones recuperó la posesión del bien inmueble en donde residió con su difunto esposo, por espacio de dos (2) días, nuevamente tuvo que salir de la posesión de la propiedad, en contravención con sus derechos y nuestro derecho vigente. Esto ante el estado emocional que la tenían los demandando antes señalados y los constantes comentarios de devaluación y presión para que se fuera de su hogar. (Énfasis suplido).

división y liquidación de comunidad de bienes hereditarios contra la Sucesión Rivera Ortiz compuesta por los aquí peticionarios y el señor Luis Rivera Peña (señor Rivera Peña).[4] En su reclamación, la señora González Dones solicitó al TPI dividir o partir, y adjudicar la herencia del causante Crecencio Rivera Ortiz, que fue su esposo por treinta y dos (32) años, que ordenara a los peticionarios y el señor Rivera Peña a entregarle a ella la posesión inmediata de la propiedad donde ella residió con su difunto esposo; que le atribuyera la vivienda que constituyó su hogar familiar como su vivienda personal y, de ser necesario, le atribuyera el derecho de habitación en forma vitalicia y gratuita; le adjudicara cualquier otro bien o cualesquiera otros bienes correspondientes en ley; y le impusiera a los peticionarios, con excepción del señor Rivera Peña, el pago de costas y honorarios de abogados.

El 19 de septiembre de 2023, el TPI notificó una *Orden* emitida el 18 de septiembre de 2023 por la cual ordenó a la señora González Dones a "mostrar causa por la cual la Región Judicial de Caguas posee competencia territorial en este caso", considerando que el inmueble objeto de partición de herencia está ubicado en Canóvanas, Puerto Rico.[5]

El 5 de octubre de 2023, la recurrida presentó una *Moción en Cumplimiento de Orden*.[6]

El 24 de octubre de 2023, el señor Rivera Peña presentó una *Contestación a Demanda*.[7]

Al siguiente día, los peticionarios presentaron una *Contestación a Demanda*, y una *Moción Solicitando Traslado* mediante la cual alegaron que tanto los peticionarios como los

---

[4] Íd., Anejo II, pág. 3-81.
[5] Véase, Sistema Unificado para el Manejo y Administración de Casos (SUMAC), Entrada Núm. 5.
[6] Íd., Entrada Núm. 6.
[7] Íd., Entrada Núm. 9.

bienes, específicamente la propiedad objeto de partición, están ubicados en Canóvanas.[8]

El 25 de octubre de 2023, la señora González Dones presentó una *Moción en Solicitud de Descalificación a tenor con el Canon 21 y 23 del Código de Ética Profesional*.[9] Mediante esta arguyeron que el licenciado Betancourt Rivera es hijo de la señora Rivera Peña, una de las herederas forzosas y peticionarias en el caso de marras:

> **. . . POR LO QUE, SI ESTA FALLECIERA EN EL PROCESO DEL LITIGIO O POSTERIOR A ESTE, EL LCDO. PEDRO L. BETANCOURT RIVERA, SERIA EL HEREDERO DE SUS BIENES HEREDITARIOS; BIENES QUE SON OBJETOS DE ESTE LITIGIO, EXISTIENDO UN CLARO CONFLICTO DE INTERÉS Y EMPAÑANDO LA TRANSPARENCIA DE LOS PROCESOS Y LA SANA JUSTICIA**.[10]

Además, según las alegaciones de la señora González Dones, el licenciado Betancourt Rivera debe abstenerse de su representación legal dado a un claro conflicto de interés con los bienes objeto de litigio; apariencia de conducta impropia; como medida preventiva para evitar que el licenciado incurra en cualquier conflicto ético y consecuentemente sea disciplinado; y como el caso de autos se encuentra en sus etapas iniciales, su descalificación no afectaría los procedimientos, lo cual sí ocurriría de surgir alguna situación que requiera su descalificación en el futuro.

El TPI emitió una *Orden de Traslado* del 25 de octubre de 2023, notificada y archivada en autos el 1 de noviembre de 2023, de la Región Judicial de Caguas a la Región Judicial de Carolina, "por ser de su competencia al ubicar en el Barrio Cubuy de Canóvanas el inmueble objeto de petición de liquidación y adjudicación".[11]

El 8 de noviembre de 2023, el TPI notificó una *Orden* emitida el 7 de noviembre de 2023 por la cual le otorgó veinte (20) días a los

---

[8] Apéndice de la petición de *Certiorari*, Anejo III, págs. 82-84; Íd., Anejo IV, págs. 85-86.
[9] Íd., Anejo V, págs. 87-90.
[10] Íd., pág. 87. (Énfasis y subrayado en el original). Dicho argumento nos parece especulativo.
[11] Véase, Entrada Núm. 15 en el SUMAC.

peticionarios y el señor Rivera Peña para presentar su posición en relación a la descalificación solicitada.[12]

El 28 de noviembre de 2023, los peticionarios presentaron una *Moción en Cumplimiento de Orden* arguyendo sus razones por las cuales no procedía la descalificación del licenciado Betancourt Rivera.[13] Entre estas que, la muerte de la señora Rivera Peña es un hecho incierto o no ha acontecido, y aún si ocurriese, "no se establece como se configuraría un conflicto de interés o se mancharía la transparencia de los procedimientos y la sana justicia y más que una razón es una imputación infundada contra el abogado".[14]

El 27 de diciembre de 2023, el foro primario notificó una *Resolución* emitida el 19 de diciembre de 2023 por la cual declaró "HA LUGAR" una *Moción en Solicitud de Descalificación a tenor con el Canon 21 y 23 del Código de Ética Profesional.*

En desacuerdo, los peticionarios presentaron la petición de *Certiorari* y le imputaron al foro *a quo* la comisión del siguiente error:

> A.    ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUS[Ó] DE SU DISCRE[C]I[Ó]N AL DECLARAR HA LUGAR LA DESCALIFICACI[Ó]N DE LA REPRESENTACI[Ó]N LEGAL DE LOS PETICIONARIOS[.]

El 29 de enero de 2024, emitimos una *Resolución* en la que le concedimos a la señora González Dones un término de diez (10) días, a partir de la notificación de la misma, para exponer su posición en cuanto a los méritos del recurso de *Certiorari.*

El 9 de febrero de 2024, la recurrida presentó una *Oposición a la Expedición del Auto de Certiorari Solicitud de Deferencia Judicial ante Ausencia de Perjuicio, Parcialidad, Error Manifiesto o Abuso de Discreción.*

---

[12] Íd., Entrada 19.
[13] Apéndice de la petición de *Certiorari*, Anejo VI, págs. 91-93.
[14] Íd., pág. 91.

Consecuentemente, el caso quedó perfeccionado para determinación judicial.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC****,* 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al. v. BBVAPR****,* 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1,[15] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corporation, et als.****,* 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. de Caguas v. JRO Construction****,* 201 DPR 703

---

[15] Esta Regla dispone que:

[....]

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. (Énfasis nuestro).

(2019). Nuestro rol al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias, o de manejo del caso, y en la cautela que debemos ejercer para no interrumpir injustificadamente el curso corriente de los pleitos que se ventilan ante ese foro. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 97 (2008).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1 debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[16]

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". ***Rodríguez v. Pérez***,

---

[16] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

161 DPR 637, 651 (2004); **_Banco Metropolitano v. Berríos_**, 110 DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". **_Citibank et al. v. ACBI et al._**, 200 DPR 724, 735 (2018); **_García López y otro v. E.L.A._**, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Íd.; **_Medina Nazario v. McNeil Healthcare LLC_**, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". **_Hietel v. PRTC_**, 182 DPR 451, 459 (2011); **_Pueblo v. Rivera Santiago_**, 176 DPR 559, 580 (2009); **_Negrón v. Srio. de Justicia_**, 154 DPR 79, 91 (2001); **_Bco. Popular de P.R. v. Mun. de Aguadilla_**, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". **_Citibank et al. v. ACBI et al._**, supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". Íd., pág. 736. Véase, además, **_Trans-Oceanic Life Ins. v. Oracle Corp._**, 184 DPR 689, 709 (2012); **_Lluch v. España Service Sta._**, 117 DPR 729, 745 (1986).

**B.**

La Regla 9.3 de Procedimiento Civil, supra, R. 9.3, establece que, a tenor con el poder inherente de supervisar la conducta de los abogados, un tribunal puede, _motu proprio_ o a petición de parte,

descalificar a un representante legal cuando este "incurra en conducta que constituya un obstáculo para la sana administración de la justicia o infrinja sus deberes hacia el Tribunal, sus representados(as) o sus compañeros(as) abogados(as)". Véase, además, *Job Connection Center v. Sups. Econo*, 185 DPR 585, 595-596 (2012). En esa línea, los tribunales pueden ordenar tal descalificación cuando abone a la marcha de un pleito, a la solución rápida, económica y justa de los litigios, y para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional, 4 LPRA Ap. IX. *Job Connection Center v. Sups. Econo*, supra, pág. 596; véase, además, *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 661 (2000). Sin embargo, nuestro máximo foro ha sido claro en que una descalificación no constituye una acción disciplinaria y no debe imponerse ligeramente. *Job Connection Center v. Sups. Econo*, supra, págs. 596-597; véase, además, *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 DPR 633, 638 (1988). Lo anterior se debe a que, la descalificación de un representante legal "afecta negativamente varios aspectos, tales como los derechos de las partes y el trámite de los procedimientos". Íd., pág. 596. Por lo tanto, solo debe proceder cuando sea estrictamente necesario y no existan otras medidas menos onerosas para asegurar la integridad del proceso y trato justo de las partes. Íd., pág. 597. Además, los tribunales deberán realizar un "balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial". Íd.

Cuando un tribunal ordena la descalificación de un abogado *motu proprio,* no será necesario presentar prueba sobre la violación ética. Íd., pág. 597; véase, además, *Meléndez v. Caribbean Int'l. News*, supra, 661; *Liquilux Gas Corp. v. Berríos, Zaragoza*, 138 DPR 850, 864 (1995); *In re Carreras Rovira y Suarez Zayas*, 115

DPR 778 (1984). Sin embargo, si quien solicita la descalificación es una parte, "la mera presentación de una moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión". ***Job Connection Center v. Sups. Econo***, supra, pág. 597. En estos casos, los tribunales deberán hacer un análisis de la totalidad de las circunstancias a tenor con los siguientes factores:

> (i) si quien solicita la descalificación tiene legitimación activa para invocarla; (ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el expertise de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica *598 del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos. ***Job Connection Center v. Sups. Econo***, supra, págs. 597-598; véase, además, ***Liquilux Gas Corp. v. Berríos, Zaragoza***, supra, pág. 865.

Los tribunales también deberán brindarle al abogado objeto de la solicitud de descalificación, la oportunidad de ser oído. ***Job Connection Center v. Sups. Econo***, supra, pág. 598; véase, además, ***Meléndez v. Caribbean Int'l. News***, supra, 670.

Finalmente, nuestro más alto foro ha reiterado que, "la determinación de derecho del tribunal de instancia de descalificar a un abogado es una decisión impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso". ***Job Connection Center v. Sups. Econo***, supra, pág. 602; véase, además, ***Meléndez v. Caribbean Int'l. News***, supra, 664. Sin embargo, los foros apelativos:

> [E]stamos llamados a revisar la decisión sobre la descalificación si se demuestra que hubo un craso abuso de discreción, que el foro primario actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial. ***Job Connection Center v. Sups. Econo***, supra, pág. 602.

**C.**

En otros términos, el Canon 21 del Código de Ética Profesional, *supra*, C. 21 les impone a los abogados el deber de evitar una representación de intereses encontrados y un deber de lealtad con su cliente. *In re Pietri Torres*, 201 DPR 583, 595 (2018); véase, además, *In re Ortiz Rivera*, 195 DPR 122, 132-133 (2016); *In re Reyes Coreano*, 190 DPR 739, 753 (2014). En lo pertinente, el Canon 21 del Código de Ética Profesional, *supra*, establece que:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. **Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.** (Énfasis suplido).

Asimismo, el Tribunal Supremo de Puerto Rico ha reiterado que el representante legal debe abstenerse de aceptar una representación cuando: "(1) **pueda verse afectada por sus intereses personales o expectativas**; (2) resulta en una representación simultánea de dos clientes con intereses adversos, o (3) el asunto del cual trata puede afectar cualquier interés de un cliente anterior". *In re Pietri Torres*, supra, pág. 595 (Énfasis suplido); véase, además, *In re Ortiz Rivera*, supra, pág. 133; *In re González Hernández*, 190 DPR 164, 172-174 (2014). Lo anterior se debe a que "la relación abogado-cliente entra en conflicto con los intereses personales, familiares, económicos, profesionales, o de otra índole, del propio abogado". *In re Rafucci Caro*, 206 DPR 589, 610 (2021). *In re González Hernández*, supra, pág. 172 (*citando a* S. Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado, Estados Unidos*, Pubs. JTS, 2010, pág. 134).

Nuestro más alto foro igualmente ha hecho hincapié en que las prohibiciones del Canon 21 del Código de Ética Profesional, *supra*, se extienden a la existencia real pero además a:

**[C]onflictos aparentemente existentes, pero que llevan consigo la semilla de un posible o potencial conflicto futuro. Es decir, está también vedado al abogado asumir la representación legal de clientes cuando resulta razonablemente anticipable un futuro conflicto de intereses, aún cuando sea inexistente al momento de la aceptación de la representación legal.** (Énfasis Suplido). *In re Ortiz Martínez*, 161 DPR 572, 581 (2004); véase, además, *Sepúlveda Girón*, 155 DPR 345, 357 (2001).

Por su parte, el Canon 38 del Código de Ética Profesional, *supra*, C. 38 les advierte a los togados a exaltar el honor y dignidad de la profesión, aunque conlleve sacrificios personales y deben evitar la apariencia de conducta impropia. Véase, además, *In re Bermúdez Meléndez*, 198 DPR 900, 906-908.

Consecuentemente, el Canon 23 del Código de Ética Profesional, *supra*, C. 23 expresamente les prohíbe a los abogados adquirir interés o participación alguna en el asunto bajo litigio. Este canon tiene como propósito prevenir conflictos de intereses que pudiesen interferir con "el ejercicio de un juicio profesional independiente por parte del abogado a quien el cliente encomendó su representación". *In re García Muñoz*, 170 DPR 780, 792 (2007).

### D.

Finalmente, el Canon 22 del Código de Ética Profesional, *supra*, C. 22 establece que,

Excepto cuando sea esencial para los fines de la justicia, el abogado debe evitar testificar en beneficio o en apoyo de su cliente. Cuando un abogado es testigo de su cliente, excepto en materias meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes, debe dejar la dirección del caso a otro abogado. Véase, además, *Alvear Maldonado v. Ernst & Young LLP*, 191 DPR 921, 931 (2014); *In re Colón Ramery*, 138 DPR 793, 795-796 (1995).

### IV.

Tras un análisis objetivo, sereno y cuidadoso de la petición de *certiorari*, a la luz de los criterios esbozados tanto en la Regla 52.1 de Procedimiento Civil, *supra*, como en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos

abstenernos de ejercer nuestra función revisora. A nuestro juicio, no atisbamos motivo o error alguno que amerite nuestra intervención. La determinación del foro primario es esencialmente correcta en derecho. Por lo tanto, no intervendremos con el manejo del caso que ha establecido el foro *a quo*.

## V.

Por los fundamentos pormenorizados precedentemente, se *deniega* la expedición del auto de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones