EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Hon. Pablo J. Oller López<br>(TS-13,669) | 2025 TSPR 34<br><br>215 DPR ___ |
|---|---|

Número del Caso:  AD-2023-0001

Fecha:  28 de marzo de 2025

Oficina de Asuntos Legales
Oficina de Administración de los Tribunales:

     Lcda. Cristina Guerra Cáceres
     Directora

     Lcdo. Wilmer S Santiago Mercado
     Asesor Legal II

     Lcdo. Juan Manuel Albino López

     Lcda. Rosa María Cruz Niemiec

Representantes legales del Sr. Pablo J. Oller López:

     Lcdo. Danny López Pujals
     Lcdo. Rafael F. Robert Sánchez
     Lcda. Daisy Calcaño López

Comisión de Disciplina Judicial:

     Lcda. Lourdes Velázquez Cajigas
     Presidenta

     Comisionadas y Comisionados Asociados:

     Lcda. Evelyn Benvenutti Toro
     Lcdo. Jorge Toledo Reyna
     Lcda. Ygrí Rivera Sánchez
     Lcda. Nélida Jiménez Velázquez
     Lcdo. Reinaldo O. Catinchi Padilla
     Dr. Juan Salgado Morales

Materia:  Conducta Profesional – Suspensión inmediata del ejercicio de la abogacía por un término de nueves meses por violación al Canon 38 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Hon. Pablo J. Oller López          AD-2023-0001
     (TS-13,669)


PER CURIAM

En San Juan, Puerto Rico, a 28 de marzo de 2025.

Una vez más nos vemos obligados a ejercer nuestra facultad disciplinaria sobre un miembro de la profesión jurídica que le faltó al honor y a la dignidad de nuestra profesión. En esta ocasión, concluimos que el Lcdo. Pablo J. Oller López quebrantó el Canon 38 del Código de Ética Profesional, infra. Por consiguiente, ordenamos su suspensión inmediata del ejercicio de la abogacía por un término de nueve meses.

I

El Lcdo. Pablo J. Oller López fue admitido al ejercicio de la abogacía el 9 de marzo de 2001. Años más tarde —el 30 de noviembre de 2022— juramentó al

cargo de Juez Superior. Asimismo, participó del programa de adiestramientos de la Academia Judicial Puertorriqueña para jueces de nuevo nombramiento que se celebró desde el 1 de diciembre de 2022 hasta el 17 de febrero de 2023. Conforme a la Orden Administrativa Núm. 2023-018, fue asignado a ejercer sus funciones judiciales en la Región Judicial de Utuado, a partir del 21 de febrero de 2023.

A tres meses de haber comenzado su labor como magistrado, la Oficina de Administración de los Tribunales (OAT) comenzó a recibir una serie de referidos sobre su comportamiento. En total, se recibieron seis señalamientos de diversa índole sobre su conducta, entre los que se denunciaron: acercamientos inadecuados hacia una funcionaria del tribunal; uso de tiempo y recursos públicos para fines personales; influencia indebida sobre funcionarios del orden público en el contexto de presuntas violaciones de las leyes de tránsito; expresiones impropias e irrespetuosas sobre sus jueces supervisores, e incumplimientos con las normas de asistencia y abandono del servicio.

Los mencionados referidos ameritaron que se iniciara un proceso de investigación al amparo de las Reglas de Disciplina Judicial, 4A LPRA Ap. XV-B. A la par, en atención a que la naturaleza de las alegaciones podía configurar conducta contraria a la política del Poder Judicial en contra del hostigamiento sexual en el empleo, así como a los Cánones de Ética Judicial, infra, y al Código de Ética Profesional, infra, la OAT tomó medidas cautelares inmediatas. Entre

ellas, se determinó que el letrado no podía relacionarse de modo alguno con la funcionaria del tribunal que denunció las interacciones inadecuadas. Además, se refirió el asunto a la Oficina de Asuntos Legales de la OAT para su evaluación, conforme con lo dispuesto en las Reglas de Disciplina Judicial y en el Procedimiento para atender alegaciones de posible hostigamiento sexual. Véase, Memorando Núm. 117 de 2 de marzo de 1988.

Tras una investigación exhaustiva, en la cual se le dio oportunidad al licenciado Oller López de ser oído, la Oficina de Asuntos Legales de la OAT rindió un informe en el que estimó que la conducta del entonces juez justificaba el inicio de una acción disciplinaria. De ahí que, el 28 de noviembre de 2023 el Director Administrativo de los Tribunales, Hon. Sigfrido Steidel Figueroa, presentó ante la Comisión de Disciplina Judicial (Comisión) el *Informe de Investigación* en el que se alegó que el letrado infringió el Preámbulo y los Cánones 1, 2, 3, 4, 5, 6, 7, 8, 13, 14, 16, 23 y 30 de Ética Judicial, 4 LPRA Ap. IV-B, así como el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Mediante determinación administrativa emitida el 28 de noviembre de 2023, la presidenta de la Comisión, Lcda. Lourdes V. Velázquez Cajigas, designó a la Comisionada Asociada, Lcda. Aleida Varona Méndez, para que evaluara el *Informe de Investigación* y determinara si existía causa probable para presentar una querella contra el licenciado

Oller López, a tenor de la Regla 13 de Disciplina Judicial, 4 LPRA Ap. XV-B.

Así pues, el 8 de diciembre de 2023 la licenciada Varona Méndez determinó que, de acuerdo con la prueba presentada, existía base suficiente para iniciar un proceso disciplinario contra el abogado. Por ello, en cumplimiento con lo preceptuado en la Regla 14 de Disciplina Judicial, 4 LPRA Ap. XV-B, la licenciada Varona Méndez instruyó a la OAT a presentar la querella correspondiente.

El 18 de diciembre de 2023, la OAT presentó una querella ante la Comisión de Disciplina Judicial mediante la cual le imputó al entonces magistrado nueve cargos por faltas a los Cánones de Ética Judicial, supra, y al Código de Ética Profesional, supra.

Sin embargo, tras varios sucesos que no es necesario pormenorizar, el 23 de enero de 2024 el licenciado Oller López informó que ese mismo día, mediante comunicación escrita dirigida al Gobernador de Puerto Rico, Hon. Pedro R. Pierluisi Urrutia, renunció a su puesto como Juez Superior. En atención a ello, el 13 de febrero de 2024 la OAT compareció y sostuvo que, conforme con la Regla 33 de Disciplina Judicial, 4 LPRA Ap. XV-B, la renuncia del querellado a la Judicatura no era impedimento para que la Comisión prosiguiera con el procedimiento disciplinario, ya que varios cargos formulados también imputaron violaciones del Código de Ética Profesional de la abogacía. Por consiguiente, el proceso continuó, por lo que el 5 de marzo de 2024 el

licenciado Oller López presentó su contestación a la querella.

Posteriormente, la OAT solicitó que se enmendara la querella para eliminar los cargos segundo, tercero, quinto, sexto, octavo y noveno, pues estaban relacionados con violaciones de los Cánones de Ética Judicial. Sucesivamente, la Comisión autorizó que el proceso disciplinario prosiguiera por las conductas imputadas en el primero, cuarto y séptimo cargo de la querella originalmente presentada. Después de la decisión, las imputaciones quedaron configuradas de la manera siguiente:

### PRIMER CARGO

Con sus diversos acercamientos físicos y verbales inapropiados, irrespetuosos y no consentidos hacia la Sra. Ivelisse Méndez Padilla en el área de trabajo, consistentes en realizar comentarios tales como que su nombre le traía recuerdos; que las Ivelisse lo ponían mal; que su nombre lo ponía nervioso; al hacerle preguntas personales, mirarla de modo inadecuado e insistente, y haberle tocado la mano y la sortija que llevaba puesta el 3 de mayo de 2023, el Querellado incurrió en conducta indebida que denota falta de prudencia y respeto hacia la referida funcionaria e infringió el Preámbulo y el Canon 38 de Ética Profesional. Con su conducta discriminatoria por razón de género, la que incluso podría configurar o percibirse como hostigamiento sexual en el empleo, el Querellado no trató con consideración y respeto a una funcionaria del Poder Judicial, fallando así en comportarse en forma digna y honorable, en consonancia con los valores principales de la profesión.

### SEGUNDO CARGO

El Querellado incurrió en conducta impropia al intentar influenciar indebidamente a los agentes de la Policía que intervinieron con él el 23 de junio de 2023. Al así actuar, el Querellado pretendió utilizar el prestigio y la confianza que le confería su cargo de Juez Superior para influir en el ánimo de estos funcionarios públicos con el fin de no ser

sometido al procedimiento de rigor como consecuencia de haber infringido la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, según enmendada. Con tal proceder, el Querellado demostró una pobre fibra moral y falta de decoro y prudencia, características indispensables de un abogado, lo que resulta contrario a lo dispuesto en el Preámbulo y el Canon 38 de Ética Profesional y a los valores esenciales de la profesión legal: la dignidad y el honor.

## TERCER CARGO

El Querellado actuó en contravención al Preámbulo y al Canon 38 de Ética Profesional al realizar comentarios denigrantes e irrespetuosos contra el Director Administrativo de los Tribunales y contra el Juez Administrador Regional, y al increpar a este último por haber referido su conducta al Director Administrativo de los Tribunales. Al así hacerlo, el Querellado incurrió en una crítica injustificada, viciosa e irrespetuosa, lastimando la dignidad personal de miembros de la Judicatura y menospreciando el prestigio de ambos jueces, así como el respeto que, como abogado, le debe a quienes fueron sus supervisores y compañeros jueces; conducta contraria a los valores principales de la profesión legal, la dignidad y el honor.

Luego de varios trámites procesales, la vista evidenciaria se celebró los días 8, 9 y 10 de julio de 2024. Ambas partes comparecieron, presentaron evidencia, interrogaron y contrainterrogaron a los testigos presentes. Ulteriormente, el 16 de agosto de 2024, tanto la OAT como el querellado presentaron memorandos de derecho y con ello el asunto quedó sometido ante la Comisión.

El 23 de septiembre de 2024, la Comisión de Disciplina Judicial rindió su determinación. Concluyó que la evidencia presentada por la OAT demostró mediante prueba clara, robusta y convincente que el licenciado Oller López incurrió en conducta contraria al Canon 38 del Código de Ética Profesional, supra, según imputada en los cargos primero y

tercero de la querella en su contra. Estos cargos versaban sobre la conducta irrespetuosa e impropia desplegada por el licenciado Oller López hacia una funcionaria del Poder Judicial, hacia el Juez Administrador de la Región Judicial de Utuado y hacia el Director Administrativo de los Tribunales. No obstante, con relación al segundo cargo de la querella, el cual imputaba influencia indebida durante una intervención de tránsito efectuada por dos agentes del orden público, la Comisión entendió que no se probó con prueba clara, robusta y convincente que su conducta transgrediera las disposiciones del Canon 38 del Código de Ética Profesional, supra.

En virtud de lo expuesto en el informe reseñado, la Comisión nos recomendó que suspendiéramos al licenciado Oller López del ejercicio de la abogacía por un periodo de nueve (9) meses.

En respuesta, el 4 de octubre de 2024 el licenciado Oller López presentó ante la Comisión una moción en la cual solicitó que se admitiera a la Lcda. Daisy Calcaño López como su representante legal, junto con el Lcdo. Danny López Pujals. Además, requirió autorización para examinar el expediente disciplinario de marras y que se le concediera, en lugar de los diez (10) días que provee la Regla 28(c) de Disciplina Judicial, supra, un término de 30 días para presentar su reacción al informe rendido por la Comisión.

Ante ello, el 7 de octubre de 2024 la Comisión de Disciplina Judicial emitió una Resolución en la cual sumó a

la licenciada Calcaño López a la representación legal del querellado y autorizó el examen del expediente. Empero, proveyó no ha lugar a la solicitud de término adicional. La Comisión entendió que, tras los múltiples plazos concedidos a lo largo del proceso, no se justificaba conceder otro más pues el abogado de récord, licenciado López Pujals, estuvo presente durante todo el trámite y ya contaba con el expediente, con copia de la evidencia documental y con la regrabación de todo lo acontecido. Aunque el querellado instó reconsideración y alegó que denegarle la prórroga lo dejaba en un estado de indefensión, nuevamente se denegó su solicitud.

Por su parte, la OAT solicitó a la Comisión que reconsiderara su postura en cuanto a que no se probó el segundo cargo con el *quantum* de prueba requerido. No obstante, se proveyó no ha lugar. Así, de conformidad con la Regla 28(d) de Disciplina Judicial, <u>supra</u>, el informe advino final el 7 de octubre de 2024, por lo que ese mismo día fue presentado ante este Tribunal.

Por último, el 17 de octubre de 2024 la OAT compareció ante nosotros para expresarse en torno a la recomendación emitida en el informe de la Comisión de Disciplina Judicial. Pese a que nos solicitó que confirmáramos las recomendaciones de la Comisión en los cargos primero y tercero, nos requirió precisamente lo contrario en cuanto al segundo cargo. Sobre esto último, la OAT afirmó que las determinaciones de hecho de la Comisión demostraron robusta y convincente que el

querellado pretendió utilizar el prestigio del cargo que ostentaba para influir en el ánimo de los agentes del orden público y así evitar que estos le impusieran una multa por manejar en exceso de velocidad. De esta forma, sostuvo que indubitablemente la conducta del querellado excedió los contornos del Canon 38 de Ética Profesional, supra, en los tres cargos imputados.

Transcurrido el término de diez (10) días dispuesto en la Regla 30(a) de las Reglas de Disciplina Judicial, supra, para que las partes comparecieran ante nos para expresarse en torno al informe, el licenciado Oller López no compareció a tiempo. Por consiguiente, de conformidad con la Regla 30(b) de las Reglas de Disciplina Judicial, supra, el caso quedó sometido para nuestra determinación final.

Sin embargo, después de haber transcurrido más de tres meses de que el caso quedó sometido en los méritos, el 24 de enero de 2025 el licenciado Oller López compareció ante nos por medio de una moción en la que solicitó 45 días adicionales para presentar una reacción al informe. El 28 de enero de 2025 la OAT se opuso por considerar la solicitud tardía e improcedente. Posteriormente, el 31 de enero de 2025 el querellado presentó una *Reacción al Informe de la Comisión de Disciplina Judicial*. Manifestó que renunció involuntariamente al puesto de Juez Superior por complicaciones de salud e "inaceptables situaciones de discrimen" en su contra. Aunque no cuestionó lo declarado por los testigos ni contradijo las determinaciones de hecho

realizadas por la Comisión, afirmó en la página 19 que el "hecho de que haya diferencia en la apreciación sobre alguna expresión o hecho en particular no derrota la existencia de buena fe y la racionalidad de la actuación del abogado querellado". El 4 de febrero de 2025 la OAT compareció nuevamente y solicitó que desglosáramos del expediente la *Reacción al Informe* por considerarla tardía, impertinente e irresponsable.

Evaluado el expediente en su totalidad, estamos en posición de resolver, no sin antes exponer el marco jurídico aplicable.

II

### A. *La Ética Judicial*

El Código de Ética Profesional acopia las normas mínimas de conducta que, como sociedad, le exigimos satisfacer a todo aquel que se desempeña como profesional del Derecho en Puerto Rico. In re Santiago Ortiz, 2024 TSPR 127, 214 DPR __ (2024); In re García Suárez, 213 DPR 1031, 1040 (2024). In re García Pérez, 211 DPR 638, 648 (2023). El propósito de este cuerpo normativo es promover los más altos principios éticos en beneficio de los clientes, de las instituciones de justicia y de la sociedad. In re Santiago Ortiz, supra; In re Vilches López, 196 DPR 479, 484-485 (2016).

En el ejercicio de nuestro poder inherente para regular la abogacía en Puerto Rico, en el Tribunal Supremo tenemos la obligación de asegurar que los miembros de la profesión legal realicen sus funciones de manera responsable,

competente y diligente. In re Soto Peña, 213 DPR 663, 675 (2024). Ello incluye, claro está, a todos los abogados a los que se les ha otorgado la responsabilidad de desempeñarse como jueces del Poder Judicial.

Hemos sido enfáticos en que el comportamiento de los miembros de la judicatura constituye uno de los pilares en los que se cimienta el sistema judicial. In re Cancio González, 190 DPR 290, 297 (2014). Por ello, se les exige una conducta intachable en todo momento —tanto en su vida profesional como privada— para que estos sirvan de ejemplo, así como que fomenten el respeto y la confianza del pueblo en el ordenamiento jurídico. In re Claverol Siaca, 175 DPR 177, 188-189 (2009). "Hay profesiones cuyo ejercicio no permite términos medios. Esto sucede con la función judicial donde se requiere que el juez o jueza conserve la rectitud de su conducta dentro y fuera del tribunal". In re Cruz Aponte, 159 DPR 170, 186 (2003). (Citas omitidas).

A los fines de guiar propiamente la conducta de los jueces establecimos los Cánones de Ética Judicial, supra, pues la facultad para destituir a los miembros de la Judicatura recae estrictamente sobre este Tribunal. Véase, In re Cancio González, supra, pág. 299; Art. V, Sec. 11, Const. PR, LPRA, Tomo 1.

Asimismo, en aras de implementar un proceso disciplinario que fomente la altura moral y ética exigida, aprobamos las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B. Estas reglas tienen el objetivo de garantizarle, tanto a

la judicatura como a la ciudadanía, la justa y pronta consideración de todo asunto disciplinario presentado, así como el debido proceso de ley. Véase, Regla 2 de Disciplina Judicial, supra. Como parte del esquema procesal estatuido, una vez la Comisión evalúa el informe realizado por la Oficina de Asuntos Legales de la OAT y determina que existe causa probable para presentar una querella, le ordena a la OAT que proceda con la presentación de esta. Véase, Regla 14 de Disciplina Judicial, supra. Luego de la presentación de la querella, se realiza el descubrimiento de prueba y se celebra una vista evidenciaria. Véase, Regla 21 de Disciplina Judicial, supra. Al culminar el debido proceso, la Regla 29 de Disciplina Judicial, supra, establece que la Comisión podrá recomendarle al Tribunal Supremo una o varias de las medidas disciplinarias siguientes: (1) desestimación y archivo; (2) amonestación; (3) censura; (4) suspensión temporal; (5) destitución; (6) sanciones como abogado o abogada, o (7) cualquier otra medida disciplinaria que corresponda con la naturaleza de la actuación.

En el pasado hemos manifestado que la renuncia de un miembro de la Judicatura o el vencimiento de su término no impide la continuación de un procedimiento disciplinario en su contra, siempre que la alegada conducta impropia pueda dar lugar a su desaforo o suspensión del ejercicio de la abogacía. In re Santiago Rodríguez, 160 DPR 245, 253 (2003); véase, además, Regla 33(a) de Disciplina Judicial, supra. En otras palabras, el hecho de que un juez deje su cargo no es

obstáculo para que pasemos juicio sobre sus actuaciones mientras fungía como tal y concluyamos, cuando los hechos lo ameriten, que incurrió en conducta que contraviene los cánones de ética profesional. In re Gaetán y Mejías, 180 DPR 846, 878-879 (2011).

Así debe ser, pues lo contrario conllevaría al absurdo de que, tan pronto un integrante de la Judicatura renuncie a su cargo o finalice el término de su nombramiento, quede exento de responsabilidad, sin más, por todas las actuaciones impropias que pudiera haber cometido. In re Ramos Sáenz, 205 DPR 1089, 1100 (2020); In re Acevedo Hernández, 194 DPR 344, 362 (2015); In re Gaetán y Mejías, supra, págs. 878-879.

Por ello, después de ocurrida la separación del cargo, la Comisión debe determinar si la conducta imputada justifica la continuación de los procedimientos para la imposición de medidas disciplinarias por violación del Código de Ética Profesional. Regla 33(a) de Disciplina Judicial, supra.

De hecho, exactamente eso fue lo que pasó en el caso ante nos. Al repasar los hechos que originaron el recurso, aunque en un principio al licenciado Oller López se le imputaron nueve cargos por alegadas violaciones a los Cánones de Ética Judicial, el 23 de enero de 2024 este renunció a su puesto como Juez Superior. Producto de este suceso, y cónsono con lo que han sido nuestros pronunciamientos, la Comisión autorizó que el proceso disciplinario se enmendara y prosiguiera por los únicos tres señalamientos que imputaban

violaciones del Canon 38 del Código de Ética Profesional, supra.

B. *Canon 38 del Código de Ética Profesional*

El Canon 38 del Código de Ética Profesional, supra, establece el deber de todo abogado de exaltar los valores principales de la profesión legal: el honor y la dignidad. In re Soto Peña, supra, pág. 677; In re Mártir González, 2024 TSPR 121, 214 DPR __ (2024). En consonancia, los juristas están obligados a conducirse de tal forma que, con su actuar, enaltezcan la imagen de su profesión. Véase, In re Rodríguez López, 196 DPR 199, 208 (2016); In re Reyes Coreano, 190 DPR 739, 757 (2014).

Todo letrado debe tener presente la función social que ejerce y la institución que representa, por lo que siempre debe proceder con un alto sentido de responsabilidad y compromiso. In re Cardona Estelritz, 212 DPR 649, 667 (2023); In re Sánchez Pérez, 210 DPR 235, 264 (2022).

Debido a que son el espejo en donde se refleja la imagen de todo el andamiaje judicial, recalcamos que el Canon 38 del Código de Ética Profesional, supra, les ordena evitar hasta la apariencia de conducta impropia. In re Soto Peña, supra, pág. 678; In re Reyes Coreano, supra, págs. 757-758. Así habrán de conducirse los abogados aunque ello conlleve sacrificios personales, pues la esperanza, el respeto y la confianza que la sociedad deposita en la institución de la justicia desmerece cuando la actuación de un letrado

representa incorrección. <u>In re Soto Peña</u>, <u>supra</u>, pág. 678; <u>In re Irizarry Rodríguez</u>, <u>supra</u>, pág. 666.

Por lo tanto, "[s]e entenderá que una conducta viola este [C]anon [38] cuando afecta las condiciones morales del abogado y hace que sea indigno de pertenecer a este foro". <u>In re Rodríguez López</u>, <u>supra</u>, pág. 208. Para justipreciar esto, se debe analizar si esa conducta realmente afecta las condiciones morales del abogado y es contraria a la dignidad y al honor de la profesión. <u>In re Reyes Coreano</u>, <u>supra</u>, págs. 757-758. Por último, de más está decir que una violación al Canon 38 de Ética Profesional, <u>supra</u>, puede conllevar la imposición de severas sanciones, incluyendo la suspensión inmediata e indefinida del ejercicio de la abogacía. Véase, <u>In re Bermúdez Meléndez</u>, 198 DPR 900 (2017); <u>In re Gordon Menéndez I</u>, 171 DPR 210, 217 (2007).

### C. *Prueba clara, robusta y convincente*

En el pasado hemos afirmado que se requiere la existencia de prueba clara, robusta y convincente de que las violaciones éticas fueron cometidas por el abogado. <u>In re Benero García</u>, 202 DPR 318, 376 (2019); <u>In re Candelaria Rosa</u>, 197 DPR 445, 459 (2017); <u>In re Quiñones Artau</u>, 193 DPR 356, 386 (2015). Podemos considerar este esquema como un estándar intermedio, pues es más exigente que el de preponderancia de la prueba, pero menos riguroso que el de evidencia más allá de duda razonable. <u>In re Benero García</u>, <u>supra</u>; <u>In re Candelaria Rosa</u>, <u>supra</u>. Si bien puede resultar difícil establecer una definición precisa, hemos descrito la

prueba clara, robusta y convincente como "aquella evidencia que produce en el juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables". In re Candelaria Rosa, supra, citando a In re Martínez Almodóvar, 180 DPR 805, 820 (2011).

A la luz de la normativa antes expuesta, nos encontramos en posición de disponer de la controversia.

## III

Para adjudicar este proceso disciplinario y justipreciar los tres cargos imputados, es necesario evaluar si cierta conducta del licenciado Oller López mientras fungía como Juez Superior quebrantó el Código de Ética Profesional de la abogacía. Con este propósito, debemos examinar las determinaciones de hechos que realizó la Comisión en su *Informe de investigación*. Estas determinaciones —que advinieron finales el pasado 7 de octubre de 2024 y que no fueron cuestionadas por ninguna de las partes— son las siguientes:

**DETERMINACIONES DE HECHOS**

1. El querellado juramentó al cargo de Juez Superior el 30 de noviembre de 2022. Conforme a la Orden Administrativa Núm. 2023-018 de 8 de febrero de 2023, el querellado fue asignado a ejercer sus funciones judiciales en la Región Judicial de Utuado, comenzando el 21 de febrero de 2023. (Hecho aceptado en la contestación a la querella).

2. […]
3. […]

4. La OAT presentó tres cargos contra el licenciado Oller López por presuntas violaciones al Canon 38 del Código de Ética Profesional, supra. Esto [sucedió] al incurrir en conducta indebida que denotaba falta de prudencia y respeto hacia la

señora Méndez Padilla mediante acercamientos físicos y verbales inapropiados y no consentidos; al intentar influenciar indebidamente a los agentes de la Policía que intervinieron con él el 23 de junio de 2023, y al realizar comentarios denigrantes e irrespetuosos contra el Director Administrativo de los Tribunales y el Juez Administrador Regional de Utuado.

5. En cuanto al primer cargo, la OAT presentó el testimonio de la señora Méndez Padilla, quien declaró que se desempeña como secretaria auxiliar en el Tribunal de Primera Instancia de Lares, donde labora desde hace once años. La señora Méndez Padilla señaló que conoció al licenciado Oller López el 29 de marzo de 2023, primer día de trabajo de este como juez superior en el Tribunal de Lares. La señora Méndez Padilla indicó que cuando los presentaron, el licenciado Oller López le comentó que había tenido una novia que se llamaba Ivelisse y que las Ivelisse le traían recuerdos.

6. Posteriormente, cuando entraron a la Sala donde se iban a atender los recursos de revisión de boletos por faltas imputadas a la Ley de Vehículos y Tránsito, le preguntó al licenciado Oller López que ¿quién iba a tomar el juramento?, y añadió que este le dijo "lo que tú quieras porque hoy en Sala estamos Pablo e Ivelisse". Además de manifestar que se sintió incómoda, la señora Méndez Padilla mencionó que el licenciado Oller López expresó que las Ivelisse lo ponían nervioso y que la miraba fijamente. Asimismo, refirió que, durante la tarde, mientras se encontraba en el área de la fotocopiadora escaneando unos documentos, el licenciado Oller López se le acercó de una manera bien pegada que la incomodó y le preguntó que con quién ella vivía. Sostuvo que se sintió intimidada e incómoda, pues era la primera vez que el licenciado Oller López iba al Tribunal de Lares y ella no le había brindado esa confianza. La señora Méndez Padilla afirmó que, para no ser irrespetuosa, le dijo al licenciado Oller López que ella vivía con su hija. El querellado insistió al repetir la pregunta de con quién vivía. Luego, el licenciado Oller López le preguntó: "quién fue el malo, tú o él?", a lo que ella le contestó que nadie fue el malo, que fueron situaciones de la vida.

7. La señora Méndez Padilla expresó que la segunda interacción que tuvo con el licenciado Oller López fue el 3 de mayo de 2023, cuando tuvo que sustituir a una compañera en el Tribunal de Lares. Explicó que ese día, el querellado continuó con las miradas

-las cuales no le agradaban- y con los comentarios de que las Ivelisse lo ponían nervioso.[1] Narró que, durante una vista, uno de los casos se tuvo que reseñalar y el querellado dijo que ese día era el cumpleaños de Ivelisse.[2] Acto seguido, el querellado anotó la fecha en el expediente y escribió entre paréntesis la palabra "Ivy".

8. Durante la tarde, el licenciado Oller López acudió a la Sala de la jueza Welda Rivera Soto, quien atendía un caso de desahucio, y se sentó al lado de la señora Méndez Padilla. Refirió que mientras tomaba las notas para redactar la minuta del caso, el querellado se acercó a ella y le tocó la mano y la sortija de Minnie que tenía puesta. Expuso que lo miró con una expresión de desaprobación y de ¿por qué le había tocado la mano y la sortija? y continuó tomando las notas. Además de manifestar que se sintió ofendida, la señora Méndez Padilla dijo que acudió donde su supervisora, la señora Marillian Pérez Rivera, y le contó lo sucedido. Añadió que durante el tiempo que lleva trabajando en el Poder Judicial nunca había tenido una experiencia similar.

9. La señora Méndez Padilla se reafirmó en que cuando conoció al licenciado Oller López no estaba sola. Asimismo, afirmó que este último realizó los comentarios de que las Ivelisse lo ponían nervioso en presencia de otras personas. A su vez, aclaró que, durante la vista de desahucio, el querellado se sentó en la silla del alguacil, la cual queda ubicada al lado del asiento de la secretaria. Además de reiterar que el querellado le tocó la mano y la sortija, la señora Méndez Padilla dijo desconocer la razón por la cual este lo hizo.

10. Por su parte, la Sra. Wanda I. Román Carrillo, quien se desempeña como alguacila auxiliar en el Tribunal de Lares, conoció al licenciado Oller López durante una vista virtual en marzo de 2023. Luego, durante una vista presencial en el Tribunal de Lares, cuando salió a relucir el nombre de la señora Méndez Padilla, el licenciado Oller comentó "ay, Ivelisse, como la ex que yo tuve. A mí las Ivelisse me ponen nervioso". Indicó que al escuchar ese comentario se asombró e incomodó, ya que le pareció algo inapropiado.

---

[1] Durante la vista, varios testigos declararon que este comentario fue realizado por el querellado desde el estrado, en presencia del público y del personal de Sala.
[2] La señora Méndez Padilla indicó que no cumplía años ese día.

11. Asimismo, la alguacila Román Carrillo relató que, en mayo, mientras estaban en la sala que presidía la jueza Welda Rivera Soto, el licenciado Oller López, quien se sentó en la silla del alguacil, estaba recostado mirando a la señora Méndez Padilla. Sostuvo que esto le causó asombro e incomodidad. A su vez, narró que, en un momento dado, mientras la señora Méndez Padilla tenía su mano en el ratón o mouse de la computadora, el licenciado Oller López "se inclina, le ro[za] la mano, y entonces le toca la sortija, pero le agarra la mano". Ante esto, dijo que miró a la señora Méndez Padilla, quien retiró la mano inmediatamente.

12. Durante el curso de la vista, el querellado se quedó dormido y emitió sonidos de ronquido, por lo que la jueza Rivera Soto tuvo que dar instrucciones a la alguacila Román Carrillo para que lo despertara. El querellado se limitó a decir que se ahogó y negó que estuviera dormido. Todo ello ocurrió durante una vista en que la Sala estaba completamente llena. El otro suceso ocurrido en Sala fue cuando el querellado confrontó problemas con su computadora y la señora Méndez Padilla se ofreció para ayudar. Por la configuración de la Sala y la ubicación de los artefactos tecnológicos, la señora Méndez Padilla se tenía que ubicar dándole la espalda al querellado. En ese momento, el querellado miró hacia el cuerpo de la señora Méndez Padilla de manera inapropiada, y aunque ella estaba de espaldas al querellado y no se percató, la alguacila Román Carrillo pudo describir la mirada incisiva del querellado.

13. La señora Brenda Mass Pagán es coordinadora de grabaciones en la región judicial de Utuado. Mientras ofrecía un adiestramiento en el Tribunal de Lares, el licenciado Oller López dijo de forma sonriente "Ivelisse, Ivelisse, a mí las Ivelisse me ponen nervioso". Dijo que notó que la señora Méndez Padilla se sintió molesta ante la situación. En sus palabras, la señora Mass Pagán miró a la señora Méndez Padilla y esta estaba como "metida en la silla" por la incomodidad que sentía. Ello motivó a que la señora Mass Pagán dijera en tono de voz alto "Juez, Juez". Durante el contrainterrogatorio, la señora Mass Pagán indicó que el comentario fue realizado por el querellado desde el estrado en presencia de las personas que se encontraban en la Sala.

14. La señora Nélida Boneta López, secretaria auxiliar en el Tribunal de Lares, confirmó que durante un

adiestramiento del sistema DCR (Digital Court Recording) en una Sala del Tribunal de Lares el 3 de mayo de 2023, hubo un momento en que el licenciado Oller López mencionó que "las Ivelisse lo ponían nervioso, lo hacían temblar". Además, sostuvo que, ante una solitud para el reseñalamiento de una vista, escuchó al querellado decir que ese día era el cumpleaños de Ivelisse. Narró que se sintió incómoda al escuchar las expresiones del licenciado Oller López ante una Sala llena.

15. El 12 de mayo de 2023, se notificó al querellado que se estaría realizando una investigación sobre la conducta imputada por la señora Méndez Padilla y se reiteraron las medidas cautelares tomadas, enfatizando que no podía relacionarse de modo alguno con la señora Méndez Padilla. (Hecho aceptado en la contestación a la querella).

16. [...]

17. [...]

18. En cuanto al segundo cargo, la OAT alegó que el licenciado Oller López transgredió el Canon 38 del Código de Ética Profesional, supra, al intentar influenciar indebidamente a los agentes de la Policía durante la intervención de tránsito acaecida el 23 de junio de 2023. Según surge del testimonio del agente Samuel Salgado Ríos, este declaró que conoció al licenciado Oller López el 23 de junio de 2023 durante una intervención policiaca por una violación a la Ley Núm. 22-2000.

19. El agente Salgado Ríos indicó que mientras patrullaba por la autopista núm. 22 en dirección de Arecibo a San Juan, cerca de Río Hondo, detuvo el Lexus negro que conducía el querellado. Antes de bajarse de la patrulla encendió la cámara corporal, que graba audio y video. El querellado señaló su identificación, la cual se encontraba en el retrovisor central, y le dijo que apelaría el boleto. El agente verbalizó que cuando el licenciado Oller López se bajó de su vehículo tenía la identificación, la cual era roja, puesta en el bolsillo de su camisa.

20. Mientras realizaban la intervención objeto de revisión, el agente Salgado Ríos y el agente Lebrón Rodríguez portaban cámaras corporales (bodycams). Como parte de los procedimientos, el juez Oller López solicitó las grabaciones de las bodycams, solicitud que fue concedida. No obstante, al

examinar la regrabación de la vista, surge que no las utilizó. (Hecho aceptado en la contestación a la querella).

21. Las videograbaciones de las cámaras que portaban ambos agentes, las que incluyen sonido, brindan los siguientes detalles de lo acontecido durante la intervención:

a. Cuando el agente Salgado Ríos se acercó al vehículo del exjuez Oller López para explicarle por qué había sido detenido, el Juez expresó lo siguiente: "yo apelaré el ticket porque yo no creo en eso" y, acto seguido, agarró su carné de juez, el cual tenía colgado del espejo retrovisor, aparentemente para asegurar que el agente lo viera. El Juez también indicó lo siguiente: "Estoy en una llamada con un compañero del tribunal, estoy en una llamada importante."

b. Al bajarse de su vehículo para fotografiar el radar, el exjuez Oller López se colocó el carné de identificación como Juez Superior en el bolsillo de su camisa, de forma tal que estuviese visible a los agentes durante la intervención. El Juez caminó hasta la patrulla y dijo que le iba a tomar una foto al radar: "porque es que yo brego con esto en la corte y yo sé...".

c. El exjuez Oller López le recriminó al agente Salgado Ríos: "Nos vemos en la corte. ¿Cómo usted le va a explicar al juez que vea el caso que un carro que tiene cruise control a 60 millas va a 70 y pico?". Poco después, el exjuez Oller López expresó lo siguiente: "Máxime cuando los estoy viendo, porque estoy viendo que ustedes están ahí y, segundo, trabajamos pal mismo equipo, trabajamos para lo mismo, pa' la justicia".

d. El exjuez Oller López, también, realizó estos comentarios: "Soy una persona honesta. Trato de mantener las cosas en ley. Porque ese es mi trabajo, verdad, revisar boletos y eso, eso es parte de mi trabajo".

e. Al culminar la intervención, y tras ser escoltado de vuelta a su vehículo, el exjuez Oller López exclamó: "Cómo voy a estar tranquilo, salgo del tribunal, ya me la dañaste". El agente Salgado Ríos intentó brindarle las instrucciones en cuanto al pago del boleto expedido y el Juez le dijo que no tenía que darle las explicaciones y que iba a presentar un recurso de revisión. Al irse, el Juez comentó: "Ahora paren a los que

van a exceso de velocidad". Acto seguido, el exjuez Oller reinició la marcha y se reincorporó a la PR-22. (Hecho aceptado en la contestación a la querella).

22. […]

23. […]

24. Según el agente Salgado Ríos expuso en su informe, el querellado se desenvolvió "de manera poco amable y descortés"; manifestó ser "funcionario del tribunal" y que "trabaja[ban] para el mismo equipo". (Hecho aceptado en la contestación a la querella).

25. En vista de lo expuesto, el 13 de julio de 2023, el Juez Administrador Regional refirió el incidente ante la atención del Director Administrativo para que fuera evaluado conforme a la normativa aplicable. (Hecho aceptado en la contestación a la querella).

26. A preguntas del licenciado Torres Meléndez, el querellado testificó, entre otros asuntos, que en efecto le manifestó al agente Salgado Ríos durante la intervención que "trabaja[ban] para lo mismo, para la justicia". (Hecho aceptado en la contestación a la querella).

27. El agente Salgado Ríos se sintió cohibido al ver la identificación, pues la asoció con la de un honorable juez. Añadió que mientras preparaba el boleto, el querellado le dijo "trabajamos para lo mismo" y que "él veía esos casos en el tribunal". El agente Salgado Ríos indicó que el licenciado Oller López conducía a 73 millas por hora en una zona cuyo límite de velocidad máxima era de 55 millas por hora. Asimismo, dijo que el querellado instó un recurso de revisión para impugnar el boleto expedido, el cual fue declarado no ha lugar.

28. En cuanto al agente Peter Lebrón Rodríguez, la OAT indicó que no lo utilizaría como testigo durante la vista, ya que entendía que su testimonio era prueba acumulativa. Además, indicó que el disco compacto admitido en evidencia -Exhibit 7- contiene las dos grabaciones de las cámaras corporales que portaban los dos agentes durante la intervención. Por su parte, luego de conversar con el agente Lebrón Rodríguez, el licenciado López Pujals informó que no lo iba a utilizar como testigo.

29. […]

30. En el tercer y último cargo, la OAT expuso que el licenciado Oller López contravino lo preceptuado en el Canon 38 del Código de Ética Profesional, supra, al realizar comentarios denigrantes e irrespetuosos en contra del Hon. Sigfrido Steidel Figueroa, Director Administrativo de los Tribunales y el Hon. José M. Orta Valdez, Juez Administrador Regional de la Región Judicial de Utuado. El juez Orta Valdez funge como juez administrador de la región judicial de Utuado. […]. El juez Orta Valdez conoció al exjuez Oller López cuando llegó asignado a la región judicial que dirige desde el año 2017. […]. El juez Orta Valdez hizo varios referidos a la Oficina de Asuntos Legales sobre distintos incidentes concernientes al exjuez Oller López. Se refirió a los Exhibits 1 y 2 de la OAT relativos a las expresiones hechas con respecto al Hon. Steidel Figueroa y con respecto a él. Otro de los referidos contenidos y presentado como Exhibit núm. 3 se refiere a los incidentes ocurridos con respecto a las intervenciones policíacas de que fue informado. El juez Orta Valdez conversó con el exjuez Oller López respecto a la intervención policíaca, aunque no le dijo que había hecho un referido a la OAT. El exjuez Oller López le manifestó que sabía que lo había referido a dicha oficina. El juez Orta Valdez le indicó que con dichos referidos no estaba adjudicando la situación, sino que era su deber poner en conocimiento al Director Administrativo de los Tribunales sobre la información que a él le llegó. Hubo otro referido, esta vez por la información que le llegó por conducto de la señora González Cordero, quien es secretaria jurídica.

31. El juez Orta Valdez describió que la señora González Cordero, quien estaba muy ansiosa y nerviosa, le contó que durante una llamada telefónica con el exjuez Oller López, este último le dijo que el Director Administrativo y él le querían hacer daño, que él no estaba solo, y que era un vaquero. Asimismo, mencionó que el alguacil Miguel Soto López le expresó que escuchó al querellado decir: "Orta ha estado callado todos estos días porque metió la pata, lo hizo mal y sus días están contados" e hizo una señal con el dedo en el cuello (de lado a lado). Conforme a la prueba desfilada, no hubo testimonio alguno que se refiriera a la Jueza Presidenta, Hon. Maite D. Oronoz Rodríguez, ni al Director Administrativo de los Tribunales, Hon. Sigfrido Steidel Figueroa.

32. Al escuchar tales comentarios relativos a su persona y la del Director Administrativo de los

Tribunales, el juez Orta Valdez se preocupó porque no era el primer incidente. Sostuvo que habló con el Hon. Steidel Figueroa, quien le recomendó enviar un correo electrónico a la Oficina de Asuntos Legales. Así, planteó que por la noche redactó el correo electrónico y lo remitió a la licenciada Guerra Cáceres. Detalló que la situación fue un poco incómoda. En cuanto al primer incidente narrado por la señora González Cordero, lo vio como algo aislado. No obstante, luego de dialogar con el alguacil Soto López notó un patrón. Por último, afirmó que sintió temor de que la situación pudiera escalar a otro nivel, ya que nunca le había pasado algo similar.

33. La señora González Cordero confirmó las expresiones dichas por el juez Orta Valdez en la silla testifical. Se desempeñaba como secretaria auxiliar en el Centro Judicial de Utuado y en ocasiones sustituía a la secretaria del exjuez Oller López cuando esta se ausentaba. Expresó que durante una llamada que recibió del exjuez Oller López a finales de septiembre de 2023, notó que este estaba molesto por una situación relacionada con una cita que tenía en la OAT. Indicó que el exjuez se desahogó con ella y le dijo algo que exacerbó su condición de ansiedad.

34. La señora González Cordero manifestó que el exjuez comentó que "ellos no sabían con quién se estaban metiendo -y ella entendió que se estaba refiriendo al Hon. Steidel Figueroa y al juez Orta Valdez-, que él no estaba solo, que él era underground, y que él era un vaquerito de Bayamón". Sostuvo que esas expresiones le causaron temor y mucha preocupación, ya que no sabía con qué intención el exjuez Oller López las profirió. Agregó que para ella una persona underground era "de la calle". Por último, señaló que decidió hablar con el juez Orta Valdez por temor a que pasara algo.

35. Sobre este particular, el señor Miguel Soto López, quien se desempeña como alguacil auxiliar en el Centro Judicial de Utuado, también ocupando la silla testifical ofreció prueba sobre lo manifestado por el querellado. Este conoció al exjuez Oller López, pues fue su alguacil de sala en el mencionado tribunal. Relató que, a finales de septiembre de 2023, el exjuez Oller López llegó a su oficina y se notaba disgustado y molesto, debido a que no le habían concedido varios días que había solicitado.

36. El exjuez Oller López le comentó al alguacil Soto López que el juez Orta Valdez "estaba calladito porque sabía que había metido las patas" e hizo un gesto de pasarse un dedo por el cuello de lado a lado. Indicó que se sorprendió mucho, pues no se esperaba ese comportamiento de parte de un juez. Durante el contrainterrogatorio, el alguacil Soto López declaró que el gesto del dedo en el cuello significaba, de modo coloquial, que al juez Orta lo iban a amonestar administrativamente por no concederle al juez Oller unos días que había solicitado.

(Citas omitidas)

Luego de analizar la conducta del licenciado Oller López a la luz de las imputaciones y del Informe rendido por la Comisión de Disciplina Judicial, podemos concluir que la evidencia presentada por la OAT demostró mediante prueba clara, robusta y convincente que —en cuanto a los cargos primero y tercero— el licenciado Oller López incurrió en conducta contraria al Canon 38 del Código de Ética Profesional, supra.

De la prueba desfilada para probar el primer cargo surge que desde el momento en que el licenciado Oller López conoció a la señora Méndez Padilla, secretaria auxiliar en el Tribunal de Primera Instancia de Lares, exhibió conducta que se apartó de lo preceptuado por el Canon 38 del Código de Ética Profesional, supra. Mediante comentarios impropios, miradas inadecuadas, preguntas de índole personal y contacto físico no consentido, el querellado atentó contra la integridad de la señora Méndez Padilla, no actuó con el mayor respeto ni exaltó el honor y la dignidad de la profesión legal. Tampoco se condujo en forma digna y honorable cuando, a través de sus acciones, laceró el ambiente de respeto,

decoro y decencia que debe existir en un tribunal. La evidencia plasmó que las funcionarias del Poder Judicial que presenciaron la conducta del abogado se sintieron incómodas e incrédulas, pues les sorprendió que un juez se comportara de esa manera. Ante este escenario, coincidimos con el informe de la Comisión y decretamos que el primer cargo se comprobó mediante prueba clara, robusta y convincente.[3]

En torno al tercer cargo, que imputó al letrado emitir comentarios denigrantes e irrespetuosos contra el Hon. Sigfrido Steidel Figueroa y el Hon. José M. Orta Valdez, el expediente demostró que el licenciado Oller López nuevamente dejó de exaltar el honor y la dignidad de la profesión al no conducirse de forma respetuosa hacia la institución legal. Luego de aquilatar los testimonios presentados, resulta más que evidente que las expresiones totalmente desatinadas, las faltas de cortesía, respeto y prudencia del entonces magistrado a sus superiores fueron irresponsables y con gran apariencia de conducta profesional impropia. Sus manifestaciones a secretarias y alguaciles fueron destempladas y atentaron contra las gestiones del Juez Administrador de la Región Judicial de Utuado y del Director Administrativo de los Tribunales. Asimismo, pretendieron poner en entredicho sus capacidades profesionales y afectar su reputación y ejecutorias administrativas.

---

[3] En cuanto a la imputación sobre conducta constitutiva de hostigamiento sexual en el empleo por parte del licenciado Oller López, la investigación de la Comisión no arrojó suficiente evidencia como para hacer una determinación a esos efectos.

Además, esta conducta tuvo consecuencias negativas en el ambiente de trabajo. A manera de ejemplo, la señora González Cordero manifestó que los comentarios amenazantes del querellado provocaron que a ella se le exacerbara su condición de ansiedad. Determinación de hechos núm. 33. Por todo ello, el licenciado Oller López obró en contravención a lo dispuesto en el Canon 38 del Código de Ética Profesional, supra.

No obstante, en cuanto al segundo cargo somos del criterio —igual que la Comisión— de que la prueba no satisfizo el *quantum* necesario para justificar una sanción disciplinaria por ese incidente. En esta imputación la OAT alegó que el licenciado Oller López transgredió el Canon 38 del Código de Ética Profesional, supra, al intentar influenciar indebidamente a los agentes de la Policía durante la intervención de tránsito acaecida el 23 de junio de 2023. Sin embargo, coincidimos con la Comisión en cuanto a que, aun cuando pudiera entenderse que actuó de forma desacertada, la evidencia no demuestra con una alta probabilidad que la intención del letrado era necesariamente utilizar "el prestigio y la confianza" que le confería su puesto para influenciar indebidamente a los miembros de la uniformada.

La Comisión entendió que por la naturaleza del trabajo que realizan los agentes del orden público, "es enteramente normal que estos reciban de los ciudadanos alegaciones de que no han cometido las faltas administrativas. Después de todo fueron manifestaciones dirigidas a mover la discreción

de agente del orden público para que no expidiera el boleto de tránsito". Informe de la Comisión de Disciplina Judicial, págs. 25-26. Si bien se observó que el querellado señaló su identificación de Juez Superior, se la colocó en el bolsillo de su camisa y le expresó a los agentes que su trabajo consistía en revisar boletos, el Informe dictaminó que no se satisfizo de forma clara, robusta y convincente que la conducta imputada al licenciado Oller López en el segundo cargo transgredió las disposiciones del Código de Ética Profesional, supra.

Reconocemos que en estos procesos disciplinarios la Comisión ocupa el papel de juzgador de hecho y, por lo tanto, está en mejor posición para aquilatar la prueba testifical. In re Benero García, supra, págs. 376-377; In re Candelaria Rosa, supra, págs. 459-460. En sintonía, hemos sostenido que las determinaciones de hecho que un comisionado especial haga en un procedimiento disciplinario merecen nuestra deferencia. In re Pérez Rojas, 213 DPR 244, 259 (2023). A pesar de que lo anterior no es impedimento para que apliquemos la acción disciplinaria que estimemos adecuada, ya que no estamos obligados a aceptar las recomendaciones de la Comisión sobre la querella ética, no nos parece que la Comisión haya actuado bajo parcialidad, prejuicio o error manifiesto en la determinación que emitió para este segundo cargo. La Comisión evaluó detenidamente los videos de la intervención y los testimonios vertidos y, aun así, no tuvo una "convicción duradera" de que se cometió la falta

imputada. A igual conclusión llegamos nosotros después de evaluar el expediente junto a la totalidad de las circunstancias.

IV

Finalmente, a la hora de determinar la sanción disciplinaria a imponer, en el pasado hemos señalado ciertos factores a tomar en cuenta. Estos son: la reputación del abogado en la comunidad; su historial previo; si constituye su primera falta y si no ha causado perjuicio a alguna parte; la aceptación y el arrepentimiento sincero por las imputaciones; la defensa frívola de su conducta; si se trata de una conducta aislada; el ánimo de lucro, y cualquier otra consideración atenuante o agravante aplicable a los hechos. In re Pérez Rojas, supra, págs. 259-260; In re Alomar Santiago, 211 DPR 265, 276 (2023).

En función de lo expuesto, surge del expediente que este ha sido el primer procedimiento disciplinario que se ha presentado contra el licenciado Oller López en los más de 20 años que lleva en el ejercicio de la profesión legal. No obstante, aunque estas ofensas constituyeron una primera falta, la magnitud de las acciones cometidas por el letrado ameritan una sanción de nuestra parte. Con su desacertado proceder, el licenciado Oller López causó angustias innecesarias en sus compañeros de trabajo y le faltó al respeto, dignidad y honor de nuestra profesión. Ante esta situación, acogemos la recomendación del informe de la

Comisión de suspender al licenciado Oller López del ejercicio de la abogacía por un periodo de nueve (9) meses.

V

Por los fundamentos expuestos, decretamos la suspensión inmediata del ejercicio de la abogacía del Lcdo. Pablo J. Oller López, por un término de nueve (9) meses. Como consecuencia, se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándoles. Del mismo modo, se le ordena que devuelva a sus clientes los expedientes de los casos pendientes y cualquier cantidad recibida en honorarios por los servicios no rendidos. Se le impone también la obligación de informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga asuntos pendientes. Por último, acreditará a este Tribunal el cumplimiento con lo aquí ordenado, incluso una lista de los clientes y los foros a quienes le notificó su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Notifíquese esta Opinión *Per Curiam* y Sentencia al señor Oller López por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA). El recibo de esta notificación será confirmado por la vía telefónica.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Pablo J. Oller López        AD-2023-0001
    (TS-13,669)

SENTENCIA

En San Juan, Puerto Rico, a 28 de marzo de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de esta Sentencia, decretamos la suspensión inmediata del ejercicio de la abogacía del Lcdo. Pablo J. Oller López, por un término de nueve (9) meses. Como consecuencia, se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándoles. Del mismo modo, se le ordena que devuelva a sus clientes los expedientes de los casos pendientes y cualquier cantidad recibida en honorarios por los servicios no rendidos. Se le impone también la obligación de informar inmediatamente de su suspensión a los foros judiciales y administrativos en los que tenga asuntos pendientes. Por último, acreditará a este Tribunal el cumplimiento con lo aquí ordenado, incluso una lista de los clientes y los foros a quienes le notificó su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Notifíquese esta Opinión *Per Curiam* y Sentencia al señor Oller López por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA). El recibo de esta notificación será confirmado por la vía telefónica.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo